[Cite as *Serra v. Guitar Ctr., Inc.*, 2017-Ohio-7789.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

WAYNE M. SERRA

    Appellant

    v.

GUITAR CENTER, INC.

    Appellee

C.A. No.    16CA010949

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    15CV185433

DECISION AND JOURNAL ENTRY

Dated: September 25, 2017

CARR, Judge.

**{¶1}** Plaintiff-Appellant Wayne M. Serra appeals, pro se, from the judgment of the Lorain County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Guitar Center, Inc. This Court affirms in part, and reverses in part.

I.

**{¶2}** On December 13, 2014, Mr. Serra visited http://www.guitarcenter.com in search of a rare Gibson Government Series Les Paul guitar. After discovering that the website indicated that it had the guitars, Mr. Serra filled in several forms and provided the website with his credit card information and billing and shipping address in order to purchase one of the guitars. After completing the forms, the website indicated his transaction was successful, and, shortly thereafter, Mr. Serra received an order confirmation via email. The order total, including shipping and tax, was $1,217.46.

**{¶3}** Several hours later, Mr. Serra received an email notification that the guitar was backordered. Mr. Serra then spoke to a customer service representative who insisted that Mr. Serra had not ordered the guitar from the website and instead had visited a cached page. In order to disprove the claim, Mr. Serra repeated the order process and ordered a second Government Series Les Paul guitar. Mr. Serra received an order confirmation for the second guitar indicating an order total of $1,170.44. Mr. Serra continued to have several exchanges with different customer service representatives. On December 15, 2014, Mr. Serra received two emails purporting to cancel the orders for the two guitars. In January 2015, Mr. Serra purchased a Government Series Les Paul guitar from an online auction site for $3,200. He maintained that the purchase was to cover the purchase of the second guitar.

**{¶4}** On January 15, 2015, Mr. Serra filed a complaint against Guitar Center, Inc. alleging two counts of breach of contract and 21 counts involving alleged violations of the Ohio Consumer Sales Practices Act ("CSPA") all related to the two guitar transactions. Prior to the deadline for filing an answer, Guitar Center, Inc. filed a motion for an extension of time "for the reason that counsel for [Guitar Center, Inc.] require[d] additional time to respond to [Mr. Serra's] twenty-three count, 45 page Complaint." Mr. Serra opposed the motion and also moved for default judgment. The trial court granted Guitar Center, Inc.'s motion and, thereafter, Guitar Center, Inc. filed an answer indicating, inter alia, that Mr. Serra "may have had internet contact with [Guitar Center, Inc.'s] subsidiary, Guitar Center Stores, Inc."

**{¶5}** In April 2015, Guitar Center, Inc. moved for summary judgment arguing that any transaction that would have occurred happened between Mr. Serra and Guitar Center Stores, Inc., not Guitar Center, Inc. In support of its motion, Guitar Center, Inc. submitted the affidavit of Timothy Martin, CFO of Guitar Center, Inc., along with accompanying documents. Mr. Serra

opposed the motion and filed a cross-motion for summary judgment on the basis that Guitar Center, Inc. was the appropriate party. Mr. Serra submitted his own affidavit, along with supporting documentation. Guitar Center, Inc. opposed the motion and submitted two additional affidavits and highly redacted Ohio tax returns from 2014.

{¶6} In June 2015, Guitar Center Stores, Inc. filed a separate complaint in a separate action against Mr. Serra seeking declarations that it did not breach any contract with Mr. Serra and that it did not violate the CSPA. Guitar Center Stores, Inc. moved to consolidate the matter with the suit between Guitar Center, Inc. and Mr. Serra. That motion was ultimately granted. Mr. Serra filed an answer and also asserted counterclaims against Guitar Center Stores, Inc. and third party claims against another entity.

{¶7} In April 2016, the trial court granted summary judgment to Guitar Center, Inc. on Mr. Serra's complaint, and included Civ.R. 54(B) language in its entry. Prior to filing his notice of appeal, Mr. Serra dismissed his claims against Guitar Center Stores, Inc. and the additional entity. Mr. Serra has timely appealed, raising three assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION BY GRANTING THE DEFENDANT-APPELLEE GUITAR CENTER, INC. ADDITIONAL TIME TO REPLY TO MR. SERRA'S COMPLAINT BECAUSE ITS MOTION FOR EXTENSION OF TIME BOTH FAILED TO ESTABLISH EXCUSABLE NEGLECT FOR FILING A LATE ANSWER AND BY DENYING MR. SERRA A JUDGMENT IN HIS FAVOR BY DEFAULT BASED ON GUITAR CENTER'S FAILURE TO TIMELY ANSWER.

{¶8} In his first assignment of error, Mr. Serra argues that the trial court abused its discretion in granting Guitar Center, Inc.'s motion for an extension of time to respond to the

complaint. In light of that error, he also contends that he was entitled to an entry of default judgment. We do not agree.

**{¶9}** Civ.R. 6(B) provides:

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Civ.R. 50(B), Civ.R. 59(B), Civ.R. 59(D), and Civ.R. 60(B), except to the extent and under the conditions stated in them.

**{¶10}** The parties do not dispute that Guitar Center, Inc. filed its motion for an extension of time prior to the deadline for filing an answer. As such, Civ.R. 6(B)(1) governed the scenario before the trial court, and Guitar Center, Inc. was not required to demonstrate excusable neglect. *Bentley v. Grey Fox Homes, Ltd.*, 184 Ohio App.3d 276, 2009-Ohio-5038, ¶ 9 (2d Dist.). Instead, the trial court had discretion to grant an extension for "cause shown[.]" *Rayness v. McNamee*, 2d Dist. Montgomery No. 25915, 2014-Ohio-2210, ¶ 8. Accordingly, the trial court's decision will not be reversed absent an abuse of discretion. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶11}** Guitar Center, Inc.'s motion for an extension of time indicated that counsel for Guitar Center, Inc. "require[d] additional time to respond appropriately to [Mr. Serra's] twenty-three count, 45 page Complaint." Following, Mr. Serra'a opposition and motion for default judgment, the trial granted Guitar Center, Inc.'s request for "good cause shown[.]"

**{¶12}** While Guitar Center, Inc.'s motion does not further elaborate on the basis for the motion, we nonetheless cannot conclude that the trial court abused its discretion in granting the

motion. Given the length of the complaint and the number of claims raised by Mr. Serra (as pointed out by the motion), it was not unreasonable for the trial court to conclude that an extension of time was warranted so that Guitar Center, Inc. could further investigate the allegations and prepare an appropriate answer. The trial court did not abuse its discretion in granting Guitar Center, Inc.'s motion for an extension of time to respond to the complaint. Further, because of the foregoing, Mr. Serra's claim that he is entitled to default judgment also must fail. Guitar Center, Inc. filed an answer within the extended deadline authorized by the trial court.

{¶13} Mr. Serra's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE COURT OF COMMON PLEAS ERRED BY GRANTING DEFENDANT-APPELLEE GUITAR CENTER, INC.'S MOTION FOR SUMMARY JUDGMENT DESPITE MR. SERRA'S PRODUCTION OF EVIDENCE SUFFICIENT TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT.

{¶14} Mr. Serra argues in his second assignment of error that the trial court erred in granting summary judgment to Guitar Center, Inc. because the evidence he submitted in opposition demonstrates that a genuine issue of material fact exists with respect to whether Guitar Center, Inc. is a proper party.

{¶15} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶16} Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977).

{¶17} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶18} Guitar Center Inc. asserted that it was entitled to summary judgment on Mr. Serra's complaint because it was a "legal stranger" to the transactions that formed the basis for Mr. Serra's claims and that Guitar Center Stores, Inc., its subsidiary, was the only entity that would have been connected to the attempted transactions by Mr. Serra. In so doing, it pointed to the general principle that a parent corporation is not liable for the acts of its subsidiaries. *See, e.g., United States v. Bestfoods,* 524 U.S. 51, 61 (1998). However, the initial question before the trial court was with whom did Mr. Serra attempt to conduct business: Guitar Center, Inc. (the parent) or Guitar Center Stores, Inc. (the subsidiary). There would be no need to address the

nuances of corporate law if a genuine issue of material fact remained with respect to whether Guitar Center, Inc. was involved in the attempted transactions.

{¶19} In support of its motion, Guitar Center, Inc. submitted the affidavit of Timothy Martin, CFO of Guitar Center, Inc. The affidavit, in its entirety, provided:

I, TIMOTHY MARTIN, being first duly sworn and cautioned according to law, do depose and state that the following facts are true:

1. I am a resident of the State of California.

2. I am the Chief Financial Officer of Guitar Center, Inc., a Delaware corporation, and have been an officer of Guitar Center, Inc. since October 1, 2012.

3. Guitar Center, Inc. is the parent corporation of more than one wholly owned subsidiary, including, Guitar Center Stores, Inc.

4. Guitar Center, Inc. and Guitar Center Stores, Inc. are separate corporations.

5. Guitar Center, Inc.'s license to do business in Ohio was voluntarily surrendered in 2000 [see attached Exhibit A].

6. In 2014, Guitar Center, Inc. did not conduct business in the State of Ohio.

7. Based upon my knowledge of Guitar Center, Inc. and internal reporting, in 2014 Guitar Center Stores, Inc. operated an ecommerce web site for the sale of musical instruments.

8. Guitar Center, Inc. had no physical (brick and mortar) stores in the State of Ohio in 2014.

9. Guitar Center Stores, Inc., not Guitar Center, Inc., was the corporate entity that would have been connected to any internet transaction or attempted internet transaction with [Mr.] Serra in 2014.

{¶20} Also attached to the motion were documents evidencing that Guitar Center, Inc. voluntarily surrendered its license to do business in Ohio in 2000.

{¶21} Mr. Serra, in his motion in opposition/cross motion for summary judgment, argued that Guitar Center, Inc. was the proper party. In support, he submitted his own affidavit, along with several other documents that were identified in the affidavit. These documents

included copies of emails detailing the backorder of the guitars and the order cancellations, copies of documents from the www.guitarcenter.com website, copies of documents indicating that Guitar Center, Inc. has technical and administrative associations with the domain name guitarcenter.com, and copies from the United States Patent and Trademark Office's website of documents related to the registration of the trademarks/service mark "GUITARCENTER.COM" and "GUITAR CENTER" to Guitar Center, Inc. Additionally, there was a document indicating that the attorney, whom Mr. Serra alleged in his complaint initiated the cancelling of his orders, listed his address as that of Guitar Center, Inc.

{¶22} In opposing Mr. Serra's motion for summary judgment, Guitar Center, Inc. additionally submitted the affidavit of its attorney and the affidavit of its Director of Tax. Guitar Center, Inc.'s attorney averred that he was an employee of Guitar Center, Inc. and had rendered legal services "for years" for Guitar Center, Inc. and all of its subsidiary corporations, including Guitar Center Stores, Inc. Guitar Center, Inc.'s Director of Tax averred that, in 2014, Guitar Center, Inc. paid no sales tax to the State of Ohio because it had no brick and mortar stores and because it did no e-commerce business in Ohio in 2014. Attached to her affidavit were highly redacted Ohio tax returns for 2014, which the Director of Tax indicated were true copies of tax returns filed by Guitar Center Stores, Inc. for 2014 in connection with its stores and internet sales through www.guitarcenter.com. All of the figures in the attached tax returns were redacted.

{¶23} While Guitar Center, Inc. did offer the affidavit of Mr. Martin, which stated that Guitar Center, Inc. "did not conduct business in the State of Ohio[]" in 2014, that averment is conclusory. Mr. Martin's affidavit does not state that Guitar Center, Inc. did not own or operate the website guitarcenter.com or that Guitar Center, Inc. did not conduct online business in 2014. Moreover, the affidavit of the Director of Tax only indicates that Guitar Center, Inc. paid no

sales tax to Ohio in 2014 because it did no e-commerce business. Viewing that evidence in a light most favorable to Mr. Serra, leaves us with questions about whether the statements in the affidavits could be true even if Mr. Serra's attempted, but not completed transactions (i.e. he did not receive the products and it is unclear if he was ever charged for them) had been conducted with Guitar Center, Inc. Mr. Martin's averment that "Guitar Center Stores, Inc., not Guitar Center, Inc., was the corporate entity that would have been connected to any internet transaction or attempted internet transaction with [Mr.] Serra in 2014" does not answer our concerns as that averment seems hypothetical and not grounded in personal knowledge; Mr. Martin does not state that Guitar Center Stores, Inc. was connected to the attempted transactions, only that it would have been the entity connected to the attempted transactions.

{¶24} Additionally, it is notable that none of the emails detailing the backorders and cancellations submitted by Mr. Serra even mention Guitar Center Stores, Inc. Instead, the emails each reference Guitar Center, Inc. once in the section about customer feedback. The remainder of the content of the emails refers to "Guitar Center," "Guitar Center Customer Service," and "guitarcenter.com." Mr. Serra submitted evidence that, at the time of the attempted transactions, "Guitar Center" and "guitarcenter.com" were registered to Guitar Center, Inc. In fact, Guitar Center, Inc. has not pointed to any document from guitarcenter.com that mentions Guitar Center Stores, Inc.

{¶25} At a minimum, Mr. Serra's evidence can be viewed as supporting the conclusion that Guitar Center, Inc. was involved in the transactions with Mr. Serra. Given the totality of the evidence, and viewing it in a light most favorable to Mr. Serra, we conclude that a genuine issue of material fact remains with respect to whether Guitar Center, Inc. was involved in the

transactions at issue. Thus, the trial court erred in granting summary judgment to Guitar Center, Inc.

**{¶26}** Mr. Serra's second assignment of error is sustained.

### ASSIGNMENT OF ERROR III

THE COURT OF COMMON PLEAS ERRED BY DENYING SUMMARY JUDGMENT TO MR. SERRA DESPITE THE PRESENTATION OF EVIDENCE BY MR. SERRA TO ESTABLISH THAT REASONABLE MINDS COULD ONLY COME TO THE CONCLUSION THAT MR. SERRA WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

**{¶27}** In Mr. Serra's third assignment of error, he maintains that he was entitled to summary judgment because he demonstrated that the transactions were conducted with Guitar Center, Inc.

**{¶28}** As noted above, we have already determined that a genuine issue of material fact exists with respect to this issue. Thus, Mr. Serra was not entitled to summary judgment. Mr. Serra's third assignment of error is overruled.

### III.

**{¶29}** Mr. Serra's second assignment of error is sustained. His first and third assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, and reversed in part. The matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

WAYNE M. SERRA, pro se, Appellant.

PHILIP OLISS, Attorney at Law, for Appellee.